IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

JOHN RAUSCH,

     Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

     Defendant.

No. C13-2066

RULING ON JUDICIAL REVIEW

---

## TABLE OF CONTENTS

*I.*     *INTRODUCTION* ............................................... 2

*II.*    *PROCEDURAL BACKGROUND* ............................. 2

*III.*   *PRINCIPLES OF REVIEW* .................................. 3

*IV.*   *FACTS* ......................................................... 5
     *A.*    *Rausch's Education and Employment Background* ............. 5
     *B.*    *Administrative Hearing held on April 29, 2012* ............... 5
     *C.*    *Administrative Hearing held on April 13, 2013* ............... 6
          *1.*    *Rausch's Testimony* ............................ 6
          *2.*    *Vocational Expert's Testimony* .................... 6
     *D.*    *Rausch's Medical History* ................................. 7

*V.*    *CONCLUSIONS OF LAW* .................................. 12
     *A.*    *ALJ's Disability Determination* ......................... 12
     *B.*    *Objections Raised By Claimant* ......................... 15
          *1.*    *Dr. Gorsche's Opinions* ........................ 15
          *2.*    *Credibility Determination* ....................... 18

*VI.*   *CONCLUSION* .......................................... 21

*VII.*  *ORDER* ................................................. 22

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 2) filed by Plaintiff John Rausch on September 10, 2013, requesting judicial review of the Social Security Commissioner's decision to deny him Title II disability insurance benefits prior to June 8, 2011.[1] Rausch asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Rausch requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On September 10, 2013, Rausch filed this action for judicial review. The Commissioner filed an Answer on November 12, 2013. On December 12, 2013, Rausch

---

[1] Rausch filed his application for Title II disability insurance benefits on January 16, 2009, with an alleged disability onset date of March 25, 2008. *See* Administrative Record at 93-100 (Rausch's application for disability insurance benefits). Rausch's case proceeded to a hearing by an administrative law judge ("ALJ") on April 29, 2010. *See id.* at 25-43 (transcript of administrative hearing). In a decision dated June 10, 2010, the ALJ denied Rausch's claim. *See id.* at 12-21 (ALJ's decision). After exhausting his administrative remedies, Rausch appealed the ALJ's decision to federal district court. On March 15, 2012, Judge Edward J. McManus reversed and remanded the ALJ's decision for further consideration of the medical evidence, in particular the opinions of a treating doctor, Dr. Gorsche. *See* docket number 14 in case number 6:11-cv-2035-EJM. A remand hearing was held before an ALJ, resulting in a partially favorable decision. The ALJ determined that beginning on June 8, 2011, Rausch was disabled and entitled to disability insurance benefits. *See* Administrative Record at 366-377 (ALJ's decision on remand from federal court). Presently before the Court is Rausch's appeal of the ALJ's remand decision. Rausch believes that he is entitled to disability insurance benefits for the time period from March 25, 2008, his alleged disability onset date, to June 8, 2011, the date the ALJ determined he was disabled. *See* Rausch's Brief (docket number 9) at 2 (Rausch "does not appeal the decision from June 8, 2011 going forward, but contests the ALJ's determination that [he] was not disabled prior to that date."). Thus, the issue on appeal before the Court is whether the ALJ's determination that Rausch was not disabled prior to June 8, 2011 is supported by substantial evidence on the record as a whole.

2

filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he was not disabled prior to June 8, 2011, and was functionally capable of performing jobs that existed in significant numbers in the national economy. On February 10, 2014, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On February 17, 2014, Rausch filed a reply brief. On January 21, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that

detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

4

## IV. FACTS

### A. Rausch's Education and Employment Background

Rausch was born in 1956. He is a high school graduate. At the administrative hearing, Rausch testified that he had taken some college courses in the past. His past work consisted mainly of truck driving and construction work.

### B. Administrative Hearing held on April 29, 2012

At the administrative hearing held on April 29, 2010, Rausch's attorney questioned Rausch about his physical problems. Rausch explained that due to shoulder problems, he has difficulty raising his arms "halfway up." Rausch also noted difficulties from arthritis in his hands. Rausch stated that cold weather made the arthritis worse and caused problems with gripping. Rausch also discussed his difficulties with back pain and osteoarthritis in his back. According to Rausch, his back problems make it difficult for him to sleep and bend.

Rausch's attorney inquired about Rausch's functional abilities:

> Q: How long can you stand before having to sit down?
> A: Like I say, it depends on the day. Sometimes walking bothers me more.
> Q: How far can you walk without stopping and taking a break? One block, two blocks?
> A: About two blocks.
> Q: Standing. How long can you stand and put dishes in the dishwasher for example?
> A: Half an hour on a good day.
> Q: On a bad day, how long?
> A: About 15-20 minutes.
> Q: How about sitting? Does sitting cause you any problems?
> A: If I sit too long, then it goes the other way. I start cramping and I got to get up.
> Q: On a good day, how long can you sit?
> A: If it's a good movie, I can sit through a movie. . . .
> Q: How about a bad day, how long can you sit?

A:      About an hour.
Q:      Do you have problems lifting things?
A:      Yes.
Q:      How much can you lift now without causing pain?  Can you lift a gallon of milk[,] for example?
A:      Yes.
Q:      How about a case of pop?
A:      A case of pop never hurts.

(Administrative Record at 38-39.)

### C. Administrative Hearing held on April 13, 2013

#### 1.      Rausch's Testimony

At the administrative hearing held on April 13, 2013, Rausch testified that his primary physical problems were bad knees and rotator cuff surgeries.  Rausch explained that "I grew up and my dad had a construction company, and so when most kids were playing in the sandbox, I had a shovel in my hands shoveling.  I was on the jobsite, you know, doing a man's work when I was young, and so I've done construction work, run heavy equipment and truck driving.  That's all I've ever done all my life.  So basically I beat my body up kind of hard."[2]

#### 2.      Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who could:

> Lift[] 10 pounds occasionally; five pounds frequently; sit[] two hours at a time for at least six of an eight-hour day; stand[] 30 minutes at a time for a least four of an eight-hour day; walk[] two blocks; no climbing ladders, ropes, and scaffolds; no working at heights; avoid concentrated exposure to extreme cold; . . . also only occasionally climbing of ramps and stairs; only occasional balancing, stooping, kneeling, crawling, and bending.

---

[2] Administrative Record at 419-420.

(Administrative Record at 420-421.) The vocational expert testified that under such limitations, Rausch could not perform his past relevant work, but could perform the following unskilled sedentary jobs: (1) document preparer (1,300 jobs in Iowa and 119,000 positions in the nation); (2) ticket counter (800 jobs in Iowa and 72,000 jobs in the nation); and (3) sorter (1,000 positions in Iowa and 10,000 positions in the nation). The ALJ provided the vocational expert with a second hypothetical, limiting the individual to:

> Lifting 20 pounds occasionally, 10 pounds frequently; sitting and standing two hours at a time for six of an eight-hour day. . . . Walking three blocks; no climbing ladders, ropes, and scaffolds; no working at heights; avoid concentrated exposure to extreme cold; only occasional balancing, stooping, kneeling, crouching, and crawling and bending[.]

(Administrative Record at 421.) Again, the vocational expert testified that under such limitations, Rausch could not perform his past relevant work, but could perform the following unskilled jobs: (1) parking lot chauffeur (450 positions in Iowa and 120,000 positions in the nation); (2) car rental deliverer (1,000 positions in Iowa and 130,000 positions in the nation); and (3) mail clerk (700 positions in Iowa and 64,000 positions in the nation).

### D. Rausch's Medical History

On August 10, 2007, Rausch met with Dr. Bradley L. Fowler, M.D., complaining of bilateral shoulder pain. Dr. Fowler noted that:

> Mr. Rausch states he has had chronic shoulder discomfort due to wear and tear from working construction and driving [a] truck all of his life. The right shoulder has been particularly worse the past 1-1/2 years. He currently works as a truck driver delivery person, which is a very physically demanding job, and this significantly aggravates his shoulder. He has severe pain that he rates as a 10/10, although he appears completely comfortable and jovial in discussing this.

(Administrative Record at 301.) Upon objective examination, Dr. Fowler found that Rausch's spine range of motion was "quite limited" in extension and lateralization in either direction. Dr. Fowler further found tenderness over both AC joints, "reasonable" external rotation strength in both shoulders, "mildly positive" impingement signs, and "very positive" O'Brien's test on the right. Dr. Fowler also reviewed x-rays and an MRI. The MRI showed a small rotator cuff tear on his right side, multi-level degenerative disc disease, and central canal stenosis at C4-5 and C5-6 with multiple neural foraminal stenosis. Dr. Fowler concluded that:

> I think Mr. Rausch certainly has some pathology going on in his shoulder. His MRI demonstrates a torn rotator cuff, some biceps tendon issues, with a superior labrum anterior and posterior tear, and acromioclavicular joint arthritis may also be contributing to his pain. His pain that he describes, however, is way out of proportion to what I would expect. He has also localized pain mostly in the area of the trapezius, which is not common for rotator cuff disease.

(Administrative Record at 302.) While he noted that surgical intervention may be required, Dr. Fowler recommended an epidural steroid injection and a rotator cuff strengthening program as treatment.

On August 24, 2007, Rausch met with Dr. Joseph B. Binegar, M.D., complaining of shoulder, arm, and neck pain. Upon examination, Dr. Binegar diagnosed Rausch with bilateral shoulder pain, with MRI showing evidence of rotator cuff tear and biceps tendon tear. Dr. Binegar opined that Rausch's shoulders were his primary pain generator. Dr. Binegar also diagnosed cervical radiculopathy, upper back pain, and carpal tunnel syndrome.

On October 12, 2007, Rausch had a follow-up appointment with Dr. Fowler. Rausch noted no significant relief from the epidural steroid injection in his right shoulder, administered in September 2007. Dr. Fowler also noted that Rausch complained of increased neck pain. Upon examination, Dr. Fowler diagnosed Rausch with chronic right

shoulder and neck pain. Dr. Fowler recommended, and upon consent from Rausch, provided Rausch with another epidural steroid injection in his AC joint.

On January 22, 2008, Rausch met with Dr. Thomas S. Gorsche, M.D., regarding left shoulder pain following a fall in December 2007. Rausch rated his pain at 8 on a scale of 1 to 10, with 10 being the greatest pain. Rausch described the pain as sharp, stabbing, aching, and causing constant discomfort. X-rays showed "some" AC degenerative joint disease. Upon examination, Dr. Gorsche diagnosed Rausch with left shoulder arthritis, AC arthritis, and partial left rotator cuff tear. Dr. Gorsche indicated that surgical intervention was likely. Dr. Gorsche also limited Rausch to light duty work and driving, but no loading or unloading of his truck.

On March 25, 2008, Rausch underwent surgery on his left shoulder. The surgery was performed by Dr. Gorsche. Rausch's preoperative diagnosis was impingement syndrome and chronic left shoulder pain. During surgery, Dr. Gorsche repaired Rausch's left rotator cuff tear, and performed a debridgement of a ruptured biceps tendon and left shoulder ligament release. At a follow-up appointment in August 2008, Rausch reported that his arm was feeling a lot better. The doctor noted that "[h]e still has some limitations on lifting and range of motion but markedly improved over previous exams."[3] The doctor concluded that Rausch's left shoulder was improved overall, by 50-60 percent.

On October 2 and 3, 2008, Rausch was referred by Dr. Gorsche to Greg Lane, MS PT, for a functional capacity evaluation. Upon testing, Lane determined that Rausch could lift between 5 and 40 pounds. Lane also determined that Rausch could sit, stand, and walk for at least 2/3 of an eight-hour workday. Lane opined that Rausch could frequently squat, crawl, climb, crouch, kneel, and balance. Lane further opined that Rausch could only occasionally bend/stoop and reach above shoulder level. Lane noted that not all of Rausch's limitations resulted from his left shoulder rotator cuff repair, but also stemmed

---

[3] Administrative Record at 281.

from problems associated with his cervical and lumbar spine and right shoulder. Lane concluded that Rausch was capable of light work as defined by the Dictionary of Occupational Titles.

On November 25, 2008, Rausch met with Dr. Gorsche to review the results of the October functional capacity evaluation. Dr. Gorsche noted that "[i]t appears that [Rausch] can do occasional above shoulder level work and occasionally lift and carry 5 pounds up to 20 feet."[4] Dr. Gorsche opined that Rausch had met maximum medical improvement and urged him to return to work. Dr. Gorsche placed the following permanent working restrictions on Rausch: (1) occasional above shoulder use, and (2) occasional lifting up to 5 pounds with his left upper extremity.

On February 20, 2009, Dr. Laura Griffith, D.O., reviewed Rausch's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Rausch. Dr. Griffith determined that Rausch could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith also determined that Rausch could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Griffith further limited Rausch to frequent fingering and handling bilaterally, frequently reaching over his right shoulder level, and occasionally reaching above shoulder level on his left. Additionally, Dr. Griffith found that Rausch should avoid concentrated exposure to extreme cold and hazards, such as machinery and heights. Dr. Griffith found no visual or communicative limitations.

On August 20, 2010, Rausch met with Dr. Dennis D. Glawe, D.O., complaining of pain in both shoulders and problems using his left hand. Rausch rated his pain at 6 on

---

[4] Administrative Record at 266.

a scale of 1 to 10. Dr. Glawe opined that Rausch "has some significant pain issues at baseline."[5] Dr. Glawe diagnosed severe arthritis in Rausch's left hand, right rotator cuff tear, and chronic pain in his left upper extremity. Dr. Glawe treated Rausch with an epidural steroid injection.

On October 14, 2010, Rausch was referred to Dr. Armando A. Villareal, M.D., for consultation regarding neck and shoulder pain. Rausch rated his pain at between 4 and 8 out of 10, depending upon his symptoms. Rausch indicated to Dr. Villareal that the "pain seems to get worse with using the shoulders, improved when he is resting."[6] Dr. Villareal diagnosed three different problems: (1) right rotator cuff tear, (2) significant cervical spondylosis, and (3) evidence of Raynaud's phenomena in his left hand. Dr. Villareal recommended surgical repair of Rausch's right shoulder and medication as treatment.

On December 1, 2010, C. David Smith, M.D., reviewed Rausch's medical records and provided DDS with a physical RFC assessment for Rausch. Dr. Smith determined that Rausch could: (1) occasionally lift and/or carry 10 pounds, (2) frequently lift and/or carry less than 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull with limitations in using his upper extremities.[7] Dr. Smith also determined that Rausch could frequently climb ramps/stairs, balance, stoop, kneel, and crouch, but only occasionally crawl. Dr. Smith opined that Rausch would be limited to frequently reaching, handling, fingering, and feeling with his hands. Dr. Smith

---

[5] Administrative Record at 630.

[6] *Id.* at 644.

[7] With regard to Rausch's limitations in pushing and pulling with both upper extremities, Dr. Smith opined that Rausch "can perform these functions frequently but not constantly." Administrative Record at 648.

also found that Rausch should avoid concentrated exposure to extreme cold. Dr. Smith found no visual or communicative limitations. Dr. Smith concluded that:

> The [medical evidence of record] is sufficient to assess the allegations of [Rausch]. [His] allegations are generally credible, however, his known [medically determinable impairments] do not explain the limitations he has alleged in sitting and walking. The credibility of those allegations is eroded by the lack of a medical rationale to explain those limitations. He can be expected to sustain work at the level outlined herein.

(Administrative Record at 654.)

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Rausch is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v.*

*Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

13

The ALJ applied the first step of the analysis and determined that Rausch had not engaged in substantial gainful activity since March 25, 2008. At the second step, the ALJ concluded from the medical evidence that Rausch has the following severe impairments: bilateral shoulder impingement syndrome, status post left shoulder rotator cuff repair, bilateral carpal tunnel syndrome, cervical degenerative disc disease, and Raynaud's disorder. At the third step, the ALJ found that Rausch did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Rausch's RFC as follows:

> [Rausch] has the residual functional capacity to perform light work[.] . . . [H]e can lift 15 pounds occasionally, 5 pounds frequently, he can sit for 2 hours at a time for 6 hours of 8 hours and stand for 30 minutes at a time for 4 hours of 8 hours. [Rausch] can walk 2 blocks but cannot climb ladders/ropes/scaffolds or work at heights. He can occasionally climb ramps/stairs, and occasionally stoop, kneel, crouch, bend, and crawl. He should avoid concentrated exposure to extreme cold[.]

(Administrative Record at 369.) Also at the fourth step, the ALJ determined that Rausch was unable to perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, prior to June 8, 2011, the date Rausch's age category changed, Rausch could work at jobs that exist in significant numbers in the national economy.[8] Therefore, the ALJ concluded that prior to June 8, 2011, Rausch was not disabled.

---

[8] On June 8, 2011, Rausch turned 55, and his age category changed. Therefore, the ALJ determined that "considering [his] age, education, and work experience, a finding of 'disabled' is reached by direct application of Medical-Vocational Rule 202.06." Administrative Record at 376.

### B. Objections Raised By Claimant

Rausch argues that the ALJ erred in two respects. First, Rausch argues that the ALJ failed to properly evaluate the opinions of Dr. Gorsche, his treating orthopedist, as required by Judge McManus' remand order filed in March 2012. Second, Rausch argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability.

#### 1. Dr. Gorsche's Opinions

Rausch argues that on remand, the ALJ failed to properly evaluate the opinions of his treating orthopedist, Dr. Gorsche. Specifically, Rausch argues that the ALJ's reasons for discounting Dr. Gorsche's opinions are not supported by substantial evidence in the record. Rausch concludes that this matter should be remanded for further consideration of Dr. Gorsche's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d

561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ addressed Dr. Gorsche's opinions as follows:

> In late March 2008 [Rausch] underwent a left rotator cuff repair. Following surgery [Rausch] underwent physical therapy and continued to follow up with his orthopedist and general practitioner. . . . His physical therapy progressed and [Rausch] reported to his orthopedist that he believed he was improving, even participating in a golf tournament in August

2008. Mr. Rausch had a functional capacity evaluation to assess his limitations . . . the examination indicated that he could occasionally work above his left shoulder and lift 5 pounds with his left arm, but could lift and carry 20 pounds with both upper extremities. The evaluator noted that [Rausch's] performance and capabilities were consistent with a light-duty level of work in the Dictionary of Occupational Titles (DOT). His treating orthopedist, Dr. Gorsche, supported this limitation and placed permanent restrictions of occasional above shoulder level work and occasionally lifting 5 pounds at a time. Dr. Gorsche stressed to [Rausch] the importance of continuing to work and trying to find something to do within his limitations on the left upper extremity. . . .

The functional capacity evaluation and [Rausch's] treating orthopedist Dr. Gorsche [are] in agreement with such recommended limitations on his left upper extremity consistent with a light-level of work for occasionally above shoulder use and occasional lift up to 5 pounds with only the left upper extremity. The undersigned gives some weight to these opinions as consistent with [Rausch's] treatment by his orthopedist, as well as the other objective medical evidence of record, and concludes the bilateral lifting of 15 pounds occasionally and 5 pounds frequently in the residual functional capacity is not inconsistent with these opinions specifically limiting the left upper extremity. Little weight is given to the restriction for only occasional overhead lifting on the left upper extremity, as inconsistent with [Rausch's] own reported abilities, such as playing golf.

(Administrative Record at 372 and 374.)

Having reviewed the entire record, the Court finds that on remand the ALJ properly considered, weighed, and addressed the opinion evidence provided by Dr. Gorsche. The Court also finds that the ALJ provided "good reasons" for the weight given to Dr. Gorsche's opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Moreover, the ALJ did not entirely reject all of Dr. Gorsche's opinions, and did give some weight to Dr. Gorsche's opinions relating to Rausch's

functional abilities.[9] Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## 2. Credibility Determination

Rausch argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Rausch maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Rausch's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may

---

[9] *See* Administrative Record at 374.

not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ determined that:

> At one point or another in the record (either in forms completed in connection with the application and appeal, in medical reports or records, or in [Rausch's] testimony), [Rausch] has reported a myriad of daily activities consistent with the residual functional capacity detailed above. [Rausch] reports he does some light house work and mows with a riding mower. He has no difficulty dressing. He drives and shops as needed. He plays golf; but offering not as well as

previously. He limits lifting to 5 pounds. The functional capacity evaluation indicated that he could do a two hand 20 pound lift and carry. The pain he reports in his feet and face are not identified in the file or associated with any known medically determinable impairment. . . . The pain he reports in his shoulders and neck is well documented in the file, but has been observed as out of proportion with the medical findings on examination. Limited care for low back pain is noted with no identified impairment other than muscle strain. He states that it is hard to wash his hair and getting harder to sleep at night, however, he is able to cook a little, [do] housework, drive, and shop. Overall, based on the medical information in file, the level and severity of medical findings do not correlate to a level of complete disabling impairment.

[Rausch] has not generally received the amount and type of medical treatment one would expect for a totally disabled individual, considering the relatively infrequent trips to the doctor for the allegedly disabling symptoms and significant gaps in [Rausch's] history of treatment after his functional capacity evaluation in October 2008.

As noted above, there have been some discrepancies in information reported by [Rausch] to various treating sources when addressing symptom levels, effectiveness of treatment, and capabilities in functioning versus what he reported to agency personnel for disability determination purposes. While the inconsistent information provided by [Rausch] may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by [Rausch] generally may not be entirely reliable. Therefore, [Rausch's] credibility is eroded. . . .

In sum, the above residual functional capacity assessment is supported by the objective medical evidence, the medical opinions when afforded appropriate weight, and [Rausch's] subjective complaints during the relevant period when taken in proper context. In view of all of the factors discussed above, the limitations on [Rausch's] capacities which were described

> earlier in this decision are considered warranted, but no
> greater or additional limitations are justified.

(Administrative Record at 373-374.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Rausch's treatment history, medical history, functional restrictions, effectiveness of medications, and activities of daily living in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Rausch's subjective allegations of pain and disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Rausch's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that on remand, the ALJ properly considered and addressed the medical evidence and opinions in the record, including the opinions of Dr. Gorsche. The Court also finds that the ALJ properly determined Rausch's credibility with regard to his subjective complaints of pain and disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.     The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.     Plaintiff's Complaint (docket number 2) is **DISMISSED** with prejudice; and

3.     The Clerk of Court is directed to enter judgment accordingly.

DATED this ___19th___ day of June, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA